JOHN WEIDER, Appellant, *v.* W. R. GRACE AND COMPANY, Respondent.

First Department, March 5, 1920.

Sales — action to recover deposit made by seller with buyer — evidence showing that condition on which forfeiture of deposit depended did not occur — counterclaim properly dismissed.

In an action to recover a deposit made by the plaintiff with the defendant it appeared that the plaintiff sold paper to the defendant and made a deposit with it " with the understanding that if the paper we have sold you should decline in price less than 13c per lb. that we are to pay you the difference out of the $1,000 we have let you have," and that the plaintiff also agreed that if the defendant did not sell the paper before a stated date the plaintiff would repurchase it at the sale price.

*Held*, that the forfeiture of the deposit or the duty to repurchase were only to occur upon the paper selling for less than thirteen cents during the time fixed, and that, on all the evidence, the court was justified in finding that the market price had not fallen below thirteen cents per pound during the period specified.

The condition precedent to the right of the defendant to appropriate the money deposited with it not having been realized the plaintiff was entitled to a return of the deposit.

It was proper to dismiss the counterclaim of the defendant which was based on the alleged agreement of the plaintiff to repurchase the paper in case the defendant had not sold it before the specified date.

APPEAL by the plaintiff, John Weider, from a determination and order of the Appellate Term, First Department, entered

in the office of the clerk of the county of New York on the 10th day of June, 1919, reversing a judgment of the Municipal Court, Borough of Manhattan, First District, in favor of the plaintiff.

*Peter R. Gatens*, for the appellant.

*Harold J. Roig*, for the respondent.

PHILBIN, J.:

The action is to recover the sum of $1,000 deposited by plaintiff with defendant under the following circumstances: The plaintiff, a dealer in paper, doing business under the name United Paper Company, offered to sell certain paper to defendant and the offer was accepted. The contract thus made was evidenced by correspondence between the parties. Two letters, one of October 25, 1918, from plaintiff to defendant, and one of October 29, 1918, from defendant to plaintiff, read as follows:

"*October* 25, 1918.

" Messrs. WM. R. GRACE & COMPANY,
     "7 Hanover Square,
             "New York:
     " Attention Mr. COIMBRA.
     " GENTLEMEN.— We wish to confirm herewith our telephone conversation of today regarding the three carloads of White Sulphite Bond which you have purchased from me at 13c per lb. less 2% for cash. The one carload of 91 cases which are in the North River Stores Co. Inc., 236 Spring St., and we have endorsed the warehouse receipt over to you with our invoice and we are to pay the one month storage which expires Nov. 19, 1918, and that you would take care of the 109 cases and 86 cases which are both on the dock today.

     " We have sold you this paper f. o. b. cars, New York.

     " We have presented to you our two checks amounting to $1,000 as a guarantee that this paper is perfect and that we would stencil the cases and label the reams providing you furnish us facilities for doing this work and that we would furnish the labor for labeling these cases and recoopering, also with the understanding that if the paper we have sold you

should decline in price less than 13c per lb. that we are to pay you the difference out of the $1,000 we have let you have.

" As soon as this paper is shipped we are to receive our $1,000 back as per the above agreement.

" Kindly confirm this notification and oblige,

" Yours very truly,
" UNITED PAPER COMPANY,
" JW /LM JOHN WEIDER."

" *Oct.* 29, 1918.

" UNITED PAPER Co.,
" 489 Fifth Ave.,
" New York City:

" DEAR SIRS.— We have your letter of the 25th of October, regarding three carloads of White Sulphite Bond.

" We have received your checks amounting to a total of One thousand and 00 /100 Dollars ($1,000.00) as a guarantee that the paper is perfect and that you would stencil the cases and label reams on one carload providing we furnish you with the facilities for doing this work, and that you would furnish the labor for the work, and do the recoopering as well.

" It is understood that your guarantee in regard to the decline of the value of the paper is good up to the 25th of December of this year, and that we are to advise you before making any sales at a lower price than 13c per lb.

" Should you desire, you have the option to buy the paper, if we are not able to sell it at more than 13c per lb.

" We will return you your One Thousand Dollars ($1,000.00) as soon as the paper is ·disposed of over the 13c per lb. price.

" Yours faithfully,
" W. R. GRACE & CO.,
" DGC.K. Per.............."

On November 14, 1918, the defendant wrote plaintiff stating that it had been unable to sell the paper at a price over thirteen cents per pound, and asked plaintiff if he would be willing to take it at that price. The plaintiff replied referring to the contract made by the two letters above set forth, and stated that if defendant did not sell the paper by December twenty-fifth, to kindly notify plaintiff and latter would purchase the

paper back from defendant at the price at which defendant purchased it from plaintiff. This was thirteen cents per pound less two per cent for cash. The defendant on November 16, 1918, acknowledged the receipt of this letter and substantially acquiesced in its statements.

On December 27, 1918, plaintiff demanded the return of the deposit on the grounds .that the time. had expired and the market price had not declined· below thirteen cents a pound. To this defendant replied on December 31, 1918, that the money had been forfeited because the plaintiff had failed to dispose of the paper at thirteen cents or more per pound within the specified period.

No request was made that plaintiff repurchase the paper until defendant wrote to plaintiff under date of January 6, 1919.

It is clear from the above facts that pursuant to the understanding between the parties the forfeiture of the $1,000 or the duty of the plaintiff to repurchase were only to occur upon the paper selling for less than thirteen cents during the time fixed.

The answer admits the sale, the deposit by plaintiff of $1,000 with defendant, and alleges that the condition of the deposit was, if such paper should by December 25, 1918, decline in price to less than thirteen cents per pound, that plaintiff would pay the defendant the difference between the market price and the purchase price out of the said deposit. By way of counterclaim it is alleged that the price did in fact decline below thirteen cents per pound by December 25, 1918, and that by reason of plaintiff's failure to repurchase the paper defendant had suffered damage of $2,000 less the $1,000 deposited.

Plaintiff testified that during the period between October 25 and December 25, 1918, the market price of the paper he sold to defendant was fourteen cents per pound f. o. b. the mills. A witness called by plaintiff, one Ebbets, who was sole agent in New York city for the Frank Gilbert Paper Company of Waterford, N. Y., the manufacturer of the paper sold by plaintiff to defendant, testified that the market price of Watco Bond paper from October 25 to December 25, 1918, was thirteen cents per pound f. o. b. the mills; he further testified on cross-examination in answer to a question as to the

difference between No. 1 Bleached White Sulphite Bond paper and Watco Bond paper that there was no difference; that " Watco is Number 1, White Bleached Sulphite Bond."

The defendant's paper buyer was called and produced a sample of the paper purchased which he testified he drew at random from the lot delivered by plaintiff to defendant.

Three dealers in paper were called by defendant to prove the market price of the paper during the period mentioned. The first one testified that on December ninth the price of all Sulphite Bond, which was the paper equal to the sample, he quoted defendant at eleven and a half cents per pound f. o. b. the mill; that to fix the price f. o. b. New York the prevailing rate of freight from wherever the mill was would be added. The second dealer when asked if he could give the market price of paper like sample on December 25, 1918, said it was very difficult. He did not think anybody else was competent to place an exact value on that paper at that time, and should say it was in the neighborhood of ten and a half or eleven cents, f. o. b. mill. The witness further said he could not say whether the testimony that in the latter part of December 1918, the paper was thirteen or fourteen cents per pound f. o. b. mill was correct but later said the price was less than twelve cents in December. The third witness testified that on or about December 25, 1918, the value of paper like that of the said sample was twelve cents per pound f. o. b. New York. He said, however, that he had had no business relations with the manufacturers of the paper and did not sell their products. He did not know what they could be bought or sold at during the period from October 25 to December 25, 1918.

We think, upon the proof submitted, that the court was justified in finding that the market price had not fallen below thirteen cents per pound during the period specified. The condition precedent to the right to appropriate the money deposited with defendant not having been realized by the decrease in price, the plaintiff was entitled to its return.

The defendant's counterclaim is based upon the breach of an alleged agreement by plaintiff to repurchase the paper at thir-. teen cents per pound in case defendant had not sold it by December 25, 1918. Reliance is placed on plaintiff's said letter of November 15, 1918, wherein plaintiff wrote that if

defendant did not sell the paper by December twenty-fifth, plaintiff would repurchase it at the price at which defendant bought it from plaintiff. We think this statement by plaintiff effected no substantial modification of the original agreement. The test still remained the lowering in price below thirteen cents, and if it did go below that the plaintiff could take the paper back at that price, or in default thereof defendant could have recourse to the $1,000. In other words, the plaintiff was simply given another method of making good his guaranty of value.

The counterclaim was properly dismissed at the trial.

The determination of the Appellate Term should be reversed and the judgment of the Municipal Court reinstated, with costs in all courts.

CLARKE, P. J., LAUGHLIN, DOWLING and MERRELL, JJ., concur.

Determination reversed and judgment of Municipal Court affirmed, with costs to plaintiff, appellant, in all courts.